### ELLA N. HASKELL V. E. J. BEEGHLEY et al., as Partners, etc.

No. 15,550.  (96 Pac. 134.)

SYLLABUS BY THE COURT.

AGENCY —Unauthorized Sale—Ratification—Evidence Insufficient. A firm of real-estate agents employed to find a purchaser for a farm entered into a written contract of sale with a prospective buyer which was materially different from, and less advantageous to the seller than, the terms upon which the agents had been authorized to make a sale. This contract was sent to the owner for her assent and ratification. In her letter acknowledging receipt thereof she used these words: "I congratulate you upon making sale." Other parts of the letter, however, indicate that she was not satisfied and had referred the matter to her general agent for examination and consideration. It further appeared that she at the same time sent the contract to her general agent, calling his attention to parts thereof to which she objected, and instructed him not to close the trade until these matters were satisfactorily adjusted. The parties failed to agree, and no sale was made. Held, in an action by the real-estate agents to recover a commission upon the ground that the unauthorized contract had been assented to and ratified by the owner of the land, that the language above quoted, standing alone, is insufficient to sustain a verdict for the plaintiffs.

Error from Dickinson district court; OSCAR L. MOORE, judge. Opinion filed May 9, 1908. Reversed.

STATEMENT.

THIS is an action to recover a commission for the sale of real estate. Plaintiff in error owned a farm in Dickinson county, which she desired to sell. She resided in Boston. She placed the property in the hands of the defendants in error, who were real-estate agents at Abilene, for sale. Considerable correspondence was had concerning the terms and conditions upon which the sale should be made, and finally a purchaser was found who, it is claimed, was ready, able and willing to purchase the place, upon terms satisfactory to the owner, but she refused to carry out the contract of sale, and this action was commenced in the district court of Dickinson county to recover the commission. A trial was had to a jury, and a verdict and judgment were obtained by the plaintiffs for the commission claimed. The defendant brings the case here for review.

On May 17, 1904, defendant wrote to her agents as follows:

"GENTLEMEN—Under date of March 18 I wrote you that as you thought the price was 'a little stiff' that I was willing to reduce the price somewhat in order to facilitate the sale, but did not at that time mention any sum. I have been expecting to hear from you, stating what, in your opinion, the farm was likely to sell for; not having received any reply, would say that I will cut the price to $11,200, absolutely net to me."

Yours respectfully,        ELLA N. HASKELL.

"Terms, $2200 cash. Balance on mortgage at six per cent. for nine years, with privilege of prepayment in the note. Should prefer nine annual notes of $1000 each rather than one note for $9000 with privilege. Interest to be paid semiannually."

In response to this she received a reply which reads:

"ABILENE, KAN., May 24, 1904.
"Mrs. Ella N. Haskell:

"Yours of May 17th received and note what you say. We should have answered your letter sooner but was neglected by being very busy. We kindly thank you for cutting the price of your farm to where I think we

can handle it for you, and which is also a good round price for same. We shall do the very best for you. The terms may have to be changed some when sold, and may not, just depends what amount of money the party may want to pay; perhaps may want to pay one-half or more cash and the balance in five years with privilege to pay any amount at any interest payment, or all, if they choose, as that is the way all mortgages are written now here. Anything you wish to change in regard to this farm or sale please write us and we shall gladly adhere to your request.

Yours respectfully,　BEEGHLEY & WAGAMAN."

Plaintiffs wrote another letter, as follows:

"ABILENE, KAN., May 28, 1904.
*"Mrs. Ella Haskell:*

"In looking over again we notice you have $11,200 net. Should we get an offer so we could realize only $11,000 net out of the deal and could not force the deal to $11,200 shall we let the deal go off, or rather take $11,000? And how about the crop—one-third crop to go with place if sold soon? By June 15th please advise us as to your wish. One-third crop generally goes with farm if sold before harvested. We sold one yesterday, one-third crop goes with place. Hope to hear from you soon.　　Yours, etc.,

BEEGHLEY & WAGAMAN."

On June 2, 1904, defendant answered these two letters in one which reads:

"GENTLEMEN—I have your favors of May 24th and 28th, and in reply will say that I do not wish to accept less than the price named of $11,200 net to me. To this amount must be added Mr. Coffenberger's claim, your commission, the expense of drawing the papers, examining the abstract, attorney fees, etc., to arrive at the purchase-price. This price does not include the growing crop or any part of it.

"I find that it is not customary to loan over forty per cent. of the valuation, and as you suggest in your favor of the 24th ult. that it may be desirable to make some change in the terms I will gladly do so. Of course, it will, as you say, depend somewhat on the purchaser, but would prefer $6200 cash, $5000 to remain on mortgage at six per cent., payable in five years with privi-

lege of prepayment at any interest date. Interest to be payable semiannually."

On July 26, 1905, the plaintiffs wrote to defendant as follows:

"MADAM—We have purchaser for your farm, 320 acres, at the price given us by your last letter, $11,800, but thinks if he will pay one-half cash now and interest at six per cent. for the rest he is entitled to one-third of the crop of this year, 1905, or at least of the corn and hay, as he considers it as cash for the farm, and no use of the farm until March 1, 1906. We wish your advice by return mail; please answer."

Defendant replied July 29, 1905, as follows:

"GENTLEMEN—I have your favor of the 26th inst. regarding a purchaser for my farm, the west half 29-12-2, Dickinson county, and in reply would say that I have referred it to Mr. Hiland Southworth, of your city, who will represent me in this matter."

On January 8, 1906, defendant received a telegram from plaintiffs which reads:

"Mrs. Ella Haskell, Room 701, 178 Devonshire, Boston, Mass.:

"Three hundred twenty sold, eleven thousand eight hundred. Letter later.

"2:13 P. M.                    BEEGHLEY & BRINEY."

The letter referred to was dated January 11, 1906, and is as follows:

"ABILENE, KAN., January 11, 1906.
"Mrs. Ella N. Haskell, Boston, Mass.:

"DEAR MADAM—We sent you a telegram a few days ago stating to you the sale of your farm, W. ½ of section 29-12-2, for the amount stating in your last letter to us, $11,800. We have $500 in cash here for you to draw on as soon as the contract is signed up by both parties and returned to us, the balance on or before March 1, 1906. The party would like for you to leave $3500 remain in farm, if you wish, for five years with privilege to pay any part, or all, at any interest payment. Interest payable semiannually, or, if you rather have all the money, he will pay cash first of March, 1906. Mr. Coffenberger told the man that all the im-

provements belong to the farm, so that is satisfactory.
Mr. Coffenberger can stay on the farm if he wishes.
The party buying it will not move on the farm himself.
If you don't want to send us contract you can send it to
National Bank of Abilene, and have Mr. Southworth,
your friend, fix up paper when the money is paid over.
We want everything right for you and will see you
get it.   Should anything not be satisfactory to you in
the contract let us know what it is and we will try and
make it so with other party, if possible.   We want
everything right on both sides and will do our best for
same.   Hope to hear from you soon."

To this defendant replied as follows, on January 16,
1906:

"GENTLEMEN—Your telegram of the 8th was duly
received, as also your letter of the 11th instant, which
reached me yesterday, and I congratulate you upon
making the sale.

"I have sent the agreement to Mr. Hiland South-
worth, together with the abstract of the farm, and he
will represent me and facilitate matters by having
some one in your city to look after my interests."

The letter to Southworth written the same day reads:

"BOSTON, January 16, 1906.
*"Hiland Southworth, Esq., Abilene, Kan.:*
"DEAR SIR—I received a letter January 15th from
Beeghley & Briney, of your city, informing me that
they had a purchaser for my farm, W. ½ 29-12-2,
Dickinson county, at the price named by me, and en-
closing agreement for me to sign.   I write Beeghley &
Briney to-day that you will draw the necessary papers
and represent me in the sale.

"I herewith return the agreement which I have
signed but which I do not wish you to deliver until you
have an understanding in regard to just what is meant
by the words, 'farm and property to be turned over to
second party as now is,' as I have now on the farm hay,
Kafir-corn and speltz, remaining unsold from the crop
of 1905, amounting in value to something like $75 or
more.   I do not wish to have inserted in the agreement
and other papers when drawn that option of prepay-
ment carries with it 'by giving thirty days' written
notice.'

"I also enclose abstract of title of both quarters,

fire- and tornado-insurance policies, and existing lease with tenant now on the farm; also a copy of Mr. Beeghley's letter to me. As the insurance has been but recently renewed, kindly see that the return premium is collected.

"If you wish the patent or other old papers let me know what is needed and I will forward same to you.

"In regard to having $3500 remain in the farm on mortgage at six per cent., would say that I am glad to have it so, prefer it to all cash, and, while I am willing to have a privilege of prepayment inserted, would hope it might not be taken advantage of, as I regard it as good an investment as I could make with the money, as I know the land that secures it. The commission on the sale is to be two and one-half per cent.

"Hoping to hear from you as the matter progresses, I remain, Yours very truly, ELLA N. HASKELL.

"If there is anything about this agreement, which I have signed and enclose, which in your opinion is not as it should be, do not deliver, but have a new one drawn to be signed by both parties. I want the sale to go through and do not want to hinder it by being 'fussy,' but I want things right."

The agreement referred to reads:

"This agreement, made this 10th day of January, 1906, by and between Ella N. Haskell, of Boston, Mass., of the first part, of ———— county, in the state of ————, and Joseph F. Syster, of the second part, of Johnson county, in the state of Kansas,

"WITNESSETH: That said party of the first part, for the consideration hereinafter mentioned, covenants and agrees, with the said party of the second part, to sell her farm, situated as follows: W. ½ of section 29, township 12, range 2 east.

"In consideration of which the said party of the second part covenants and agrees to pay unto the said party of the first part, for the same, the sum of eleven thousand and eight hundred dollars, as follows: Five hundred dollars cash paid in hand, which is hereby acknowledged, and seven thousand eight hundred dollars on or before the first day of March, 1906; the remainder, three thousand five hundred, a mortgage to be taken on above farm by first party for a term of five years with privilege of second party to pay off all or any part at any interest payment; interest payable

semiannually at 6 per cent.  First party to make all necessary papers, deed, abstract free of all encumbrances to date, March 1, 1906.  Insurance policy to be transferred to second party, $\frac{1}{3}$ growing crop to go to second party free.  Farm and property to be turned over to second party as now is except natural wear excepted, with interest on the amount due payable at the time of each payment.  And, for the true and faithful performance of all and every of the covenant . . . and agreement . . . above mentioned, said parties bind themselves, each to the other, in the penalty sum of —— dollars, as liquidated damages to be paid by the failing party.

"In Witness Whereof, The parties of these presents have hereunto set their hands the day and year first above written.

Ella N. Haskell.
Joseph F. Syster."

"Executed in the presence of

On January 22 plaintiffs wrote to defendant as follows:

"Abilene, Kan., January 22, 1906.
"*Mrs. Ella Haskell:*
"Your letter and contract received.  We went and seen Mr. Coffenberger about giving possession by the first of March.  The young man who lives on the farm and farmed it the last season for the old man who has it leased told us he could give possession by the first, but when we went to see Mr. Coffenberger he thought the matter over a little and asked who would rent the land.  We told that if his boy wanted to rent it the man who bought told us he could rent it, he thought, if he did not move out on it; so the old Mr. Coffenberger said as soon as he would rent it to his son he would release the lease.  We told him how the lease read, that he had to go off in ninety days after the place was sold.  Well, he said that could go near May and he could not do anything on the farm till that time and he would not be able to get a renter to wait so late and he would be bound to rent it to his son, and intimated that it may cause the deal to fall through and his son can stay on the farm; and we saw the man who bought the

farm at once, and had a talk with him, and he said he wanted possession the first of March. Now we will do our best here to hold the deal as it is a good man and a good deal. As this was the first man we could tie up on that farm yet and we must hold it now. Will you please write Mr. Coffenberger a letter and give him a kind talk as you have been very kind to him for a long time and we will do, our best here for him. Write him by return mail and us also.

Yours, etc.,<br>BEEGHLEY & BRINEY.

. "Probably you had better offer him a little something to get off the first of March, as the sale is a good one and Mr. Syster is rather nervous and may call off the deal. Let us hear from you by return mail."

They again wrote a letter which reads:

ABILENE, KAN., January 27, 1906.

"*Mrs. Ella Haskell:*

"We have written you a week ago and have not heard anything from you and we are awaiting your answer. Mr. Coffenberger has not yet released the lease to give possession March 1, 1906. We saw him yesterday and had a talk with him about it. He says he will release or sign off when he hears from you. Now if you had ever said anything in any one of your letters about subject to lease from the first to last letter you wrote us—we have every one on file here—we would have sold it that way, but we again looked and examined every letter we have ever received from you but find not a word of any lease named in them, and we received the letter dated January 16, 1906, congratulating us in making the sale, but you still fail to say anything about the subject to lease, but you say you have sent agreement to Mr. Hiland Southworth and he says this sale must be made subject to him, and find you have not signed contract. Now we have sold your farm as per letters before us, $11,800, $11,200 net to you, $500 deposited to your credit in national bank to be drawn as soon as agreement is signed, balance cash first day of March, 1906. Now if you will write Mr. Coffenberger and kindly ask him to release the lease for first of March, possession to the purchaser, he will do so, as he told us he would not spoil the deal, but wanted to hear from you; so let him hear from you at once and us also. We have tried hard to make a sale for over two

years, and drove more than forty men over that farm and advertised it extensively, and finally succeeded in making the sale according to your instructions to us and truly hope there will be no jar in the sale now, as we want nothing but right and honesty.    Let us hear by return mail.              Yours, etc.,
                              BEEGHLEY & BRINEY."

To these letters the defendant replied by a letter which reads:

                    "BOSTON, MASS., January 29, 1906.
*"Beeghley & Briney, Abilene, Kan.:*
"GENTLEMEN—I am in receipt of your letters of the 22d and 27th inst., and have referred them to my representative, Mr. Hiland Southworth, for answer.

"Mr. Southworth is in complete charge of my affairs, and anything you may have to say regarding the sale of the farm must be addressed to him.
            Yours respectfully,    ELLA N. HASKELL."

On February 22 defendant wrote a letter to her tenant, which reads:

                    "BOSTON, MASS., February 22, 1906.
*"Mr. Henry Coffenberger, Abilene, Kan.:*
"MY DEAR FRIEND—I want to tell you how glad I am that you and yours are to remain on the farm, for so Mr. Southworth wrote me, telling me that Mr. Syster has agreed to let you stay on the place for another year. This will give John plenty of time to look about and settle himself, should Mr. Syster want it next year.    I hope the coming season will prove to be a good crop year, that Mr. Syster may appreciate his tenant and perhaps he may want him to continue.    I thank you very cordially for yielding in the matter of the lease between us, and so not spoiling the sale, and am very glad it has adjusted itself so pleasantly.    I am assuming that the sale is made and that the deal will go through, but as yet no money has been paid nor papers passed, and one is not sure of anything nowadays until the cash is in one's hand.    I feel very sure that the farm will increase in value, and, were I ten or twenty years younger, I would not have sold, but I have been in office life for twenty-four years, five years before my marriage, and nineteen since my husband's death.    I have worked hard and I am tired.    I can realize more income from investing the money than I could from the farm,

one year with another, so I wanted to .sell that I· might be able to take life a little easier, before I get too old to enjoy my freedom; so I thank you for your part in making the sale.   Our business and social relations have always been pleasant, and I hope you will let me hear from you now and then, as I shall be interested both in your family and the old place that was once my home.

"Ask John what about the Kafir-corn and also the speltz, have they been marketed?   We are all well and send kind regards to all the family.

Sincerely yours,        ELLA N. HASKELL."

Southworth refused to deliver the contract for the reason that it contained provisions to which defendant did not agree.   The proposed purchaser refused to consider any other conditions.   The sale was not made, and this action was brought to recover a commission.

*G. W. Hurd,* and *Arthur Hurd,* for plaintiff in error.

*S. S. Smith,*.for defendants in error.

The opinion of the court was delivered by

GRAVES, J.:  The question of fact involved in this case is whether or not the plaintiffs found a purchaser for the defendant's farm who was ready, able and willing to buy the place for the price and upon the terms and conditions given by the defendant to her agents.   The letters hereinbefore given constitute the contract between the parties.   From these it clearly appears that the lowest price for which the defendant agreed to sell the place was $11,800, or $11,200 net to her; $6200 to be cash, balance due in five years at 6 per cent. interest, to be secured by mortgage on the place.   This offer did not include the crop or any part of it, and did not include any expense to her for commission, attorney's fees, abstract or preparation of papers.   Nothing was stated concerning insurance.   The plaintiffs made a written contract with one J. F. Syster, in which he agreed to pay $500 cash, $7800 March 1, 1906, and

Haskell v. Beeghley.

secure the remainder, $3500, by a mortgage on the farm due five years after date, with interest at 6 per cent. per annum, payable semiannually, with privilege to pay all or any part at any interest payment. The defendant was obligated to furnish all necessary papers, deed and abstract, assign her insurance policies, and to surrender one-third of the growing crops. It seems clear that this falls far short of being a purchaser who is ready, able and willing to purchase upon the terms fixed by her.

In argument counsel practically concedes that such a purchaser was not produced, but insists that the contract made by the plaintiffs with the purchaser, although different from the one they were authorized to make, was consented to and ratified by the defendant, and she thereby became liable for a commission. In support of this argument reference is made to her letter of January 16, 1906, in which occur the words: "I congratulate you upon making sale." This fragment of a sentence is said to be sufficient to show that defendant accepted the unauthorized conditions of the contract inserted by the plaintiffs, and that then and there the contract of sale was closed to her satisfaction. This conclusion ignores the other language used in the same letter; it disregards the letter written by her at the same time to Mr. Southworth, and other material features of the transaction. It will be seen that in the same letter, immediately following the words quoted, it is stated that she has referred the matter to Mr. Southworth, who will represent her in the matter. It further appears that she at the same time transmitted the contract to Southworth, with a letter directing him not to deliver the contract until certain matters mentioned by her were satisfactorily adjusted. The difference between this contract and the one authorized by her is so material and important that her consent thereto should not be found to exist until established by some tangible evidence.

The idea of consent on her part is sought to be strengthened by a letter which she wrote to her tenant on February 22, 1906. The force of this letter is broken somewhat by the circumstances· under which it was written. The sale is claimed to have been made January 8. The contract was received by the defendant, and by her sent to Southworth, January 16. On January 22, and again on January 27, the plaintiffs wrote to the defendant urging her to write to Coffenberger, her tenant, for the purpose of inducing him to release his lease. On February 22 she wrote this letter. In it, however, while speaking as though a sale had taken place, she uses this language: "I am assuming that the sale is made and that the deal will go through, but as yet no money has been paid nor papers passed, and one is not sure of anything nowadays until the cash is in one's hand."

If a sale had been made on January 8 satisfactory to defendant, why this effort more than a month afterward to have the defendant endeavor to induce her tenant to release his lease? It is quite evident that the plaintiffs did not regard their commission as earned until after the sale had entirely failed. It is equally clear that the defendant did not consent to the contract made with the alleged purchaser. On the contrary the evidence, when considered as a whole, clearly and conclusively shows that she refused to consent thereto. Great latitude is given to juries in the determination of questions of fact, and a verdict will not be disturbed when· there appears to be any evidence upon which it can rest. This rule, however, can not be extended so as to permit important rights to be disposed of upon the assumption that there is ·some evidence to justify it, where the only proof consists of fragmentary sentences taken from the body of a written instrument and disassociated from the other language of the instrument, when the language so taken is thereby rendered susceptible of a meaning materially different

from that which it would have if left in its place and considered with the instrument and transaction as a whole. The language "I congratulate you upon making sale," taken from the body of the letter of January 16, 1906, and a similar expression in defendant's letter written to her tenant February 22, 1906, constitute the sole evidence upon which plaintiffs rely to establish the assent of the defendant to their unauthorized contract. We do not think such disconnected expressions can be considered as any evidence upon which to rest a verdict. The demurrer to the evidence should have been sustained.

The judgment of the district court is reversed, with directions to grant a new trial and proceed in accordance with the views herein expressed.